# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM,

vs.

KESNER RASAUO,

      Defendant.

) CRIMINAL CASE NO. CM742-08
)
)
)
)
) **DECISION AND ORDER**
) **(Defendant's Motion to Suppress)**
)
)
)
)
)
)

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on March 30, 2009 and April 1, 2009, for a hearing on Kesner Rasauo's ("Defendant") Motion to Suppress. Attorney Maria G. Fitzpatrick appeared on behalf of the Defendant. Attorney Shane F.T. Black appeared on behalf of the People of Guam ("the People"). Upon review of the evidence, oral and written arguments, and legal authorities presented by both attorneys, the court hereby issues this Decision and Order.

## BACKGROUND

On December 1, 2007, Defendant was pulled over at sobriety checkpoint. Defendant failed a field test. Defendant then was given a Miranda waiver form, which he signed. Defendant was also given a consent form for a breath test – which he signed. Officer Flickenger

administered a Breathilyzer test on the Defendant – which read a blood alcohol content of .132%. On the same date, Defendant was arrested for Driving Under the Influence of Alcohol. He was booked and released on the same date after signing a Citation and Notice to Appear.

## DISCUSSION

Defendant argued that Defendant is unable to read in the English language, Defendant was unable to sign a Miranda waiver form or sign a consent form for a breath test; and therefore, any statements made by Defendant and the results of the breath test should be suppressed. Defendant's Motion to Suppress at 3 (February 19, 2009).

In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." For purposes of Miranda, interrogation "refers not only to express questioning, but also to any words or actions on the part f the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980).

A suspect who has been informed of his rights "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." Miranda, 384 U.S. at 444, 86 S.Ct 1602 (1966). The burden rests on with the government to prove a valid waiver by preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168-169, 107 S.Ct. 515 (1986). "'A valid waiver of [a defendant's] Miranda rights depends upon the totality of 'the circumstances, including the background, experience, and conduct of the defendant.'" People v. Sannalang, 2001 Guam 18, ¶ 13 (quoting United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998). In considering whether a statement in one of free will, the courts look to several factors,

including: age, education, and intelligence of the defendant; the length of detention and questioning; whether Miranda warnings were given; the defendant's physical and mental characteristics; and the location. U.S. v. Chalan, 812 F.2d 1302, 1307 (10th Cir. 1987). "In no case, however, is any single factor determinative." Id. Once the Defendant validly waives his Miranda rights, interrogation may continue until the defendant invokes his rights or changed circumstances suggest the responses have become involuntary. U.S. v. Abreu, 730 F.Supp. 1018, 1030 (D. Colo. 1990).

In deciding if the waiver was intelligent, the court looks at whether "the defendant knew that he did not have to speak to police and understood that statements provided to police could be used against him." United States v. Hernandez, 913 F.2d 1506, 1510 (10th Cir. 1990). The defendant need not appreciate "the tactical advantage of remaining silent" for the waiver to be intelligent. Id. The Supreme Court has "never 'embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness.'" Connecticut v. Barret, 479 U.S. 523, 530, 107 S.Ct. 828 (1987) (quoting Oregon v. Elstad, 470 U.S. 298, 316, 105 S.Ct. 1285 (1985)).

Language barriers are a factor to consider, because they may impair a suspect's ability to act knowingly and intelligently. Untied States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir 1985). Language is not a stumbling block when the suspect is advised of his rights also in a language that he ostensibly understands. See, e.g., United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir 1987). It becomes a difficult problem when the Miranda rights are given in English only. In these instances, a court must consider what effort the officer made to communicate, whether the defendant responded that he understood his rights or ever indicated that he did not understand them, and what the defendant displayed in English skills.

In <u>United States v. Bernard S.</u>, 795 F.2d 749 (9th Cir. 1986), the defendant's native language skills were deficient to the point that an interpreter had been used during trial. In finding that the defendant had knowingly waived his rights, the Ninth Circuit emphasized that the officer had explained the rights and had asked the defendant if he understood them and that the Defendant had responded that he did and had never indicated that he did not understand his rights. 795 F.2d at 752.

In <u>Campaneria v. Reid</u>, 891 F.2d 1014 (2nd Cir. 1989), the Second Circuit found that the defendant had a limited proficiency in the English language but had displayed in an interview a sufficient command of English to have understood Miranda warnings read to him. In a similar vein, the First Circuit in <u>United States v. Abou-Saada</u>, 785 F.2d 1, 10 (1st Cir. 1986), rejected the defendant's argument that the very fact he was provided an interpreter shows an inadequate knowledge of the English language. The court instead looked to a number of circumstances showing the defendant's ability to understand and use the English language, such as his answers to the interrogating officers. <u>Id</u>.

In Contrast, the Sixth Circuit found an English only Miranda warning insufficient where the defendant was a West German national, who had resided in the United States only three months, could not drive, had no friends in the United States other than her husband, and spoke only broken English. <u>United States v. Short</u>, 790 F.2d 464, 469 (6th Cir. 1986). The court looked to several other factors in reaching this conclusion. The defendant was not familiar with the American criminal justice system. A social services officer present during the interrogation testified that she questioned whether the defendant understood the implications of the answers and that she thought the defendant appeared ignorant and evidenced judgment limitations. The magistrate Judge appointed an interpreter for her at trial. The defendant's written statement

contained language that obviously was not hers, and the statement appeared, at best, to be the agent's interpretation of her halting English. 790 F.2d at 469.

### a. Field Sobriety Test

Defendant argued that he had a limited knowledge of English. Defendant's Motion to Suppress at 3 (February 19, 2009). Defendant testified that when he was pulled over, Officer Flickenger asked him some questions. The police officer asked him the following: for his driver's license, for his car registration, and whether Defendant had been drinking. Motion Hearing at 4:28 p.m. (March 30, 2009). Defendant testified that he understood the police officer's questions. Id. Defendant testified that he had two beers. Id.; Motion Hearing at 10:41 a.m. (April 1, 2009). Officer Flickenger stated that Defendant responded to his questions in English. Id. at 10:40 a.m. Officer Flickenger assessed Defendant's English skills as fair. Id. at 10:41 a.m.

Officer Flickenger then asked Defendant to get out of the car and asked him if he would submit to a field sobriety test. Motion Hearing at 4:29 p.m. (March 30, 2009); Motion Hearing at 10:41 a.m. (April 1, 2009). Defendant agreed to take the field sobriety test. Id. Defendant responded in English. Id. The field sobriety test consists of verbal instructions in English as well as physical demonstrations. Id. at 10:42 a.m.

The field sobriety test consisted of a series of tasks Defendant had to perform. One task consisted of Defendant being asked to walk in a straight line and turning. Officer demonstrated that Defendant had to place his left foot on the line and place his right foot in front of his left, keep his hands by his side and watch as Officer Flickenger demonstrated the test. Id. at 10:43 a.m. Officer Flickenger explained that defendant had to make heel to toe contact, take nine steps forward, then turn and nine steps back. Id. Officer Flickenger asked Defendant to walk in

a straight line on the road. <u>Motion Hearing</u> at 4:29 p.m. (March 30, 2009). Officer Flickenger asked Defendant to walk, and he understood the instructions fi-om the police. <u>Id</u>. Another task involved Defendant being asked to raise his leg. Officer Flickenger asked Defendant if had any problems with any of his legs, asked the Defendant to raise the leg of his choosing six inches fi-om the ground, keep the toes pointed forward, hands down by his side, look at his toes and count fi-om one to thirty. Motion Hearing at 10:43 a.m. (April 1, 2009). Officer Flickenger indicated that Defendant was able to follow the instructions he had given to Defendant – which were in English. <u>Id</u>. Officer Flickenger was under the impression that Defendant understood his instructions. <u>Id</u>. Officer Flickenger stated that when he gives any instructions or demonstrations he confirms whether the person understood his instructions or demonstrations. <u>Id</u>. at 10:46 a.m. Defendant stated he only understood Officer Flickenger because of Officer Flickenger's gestures. <u>Motion Hearing</u> at 4:31 p.m. (March 30, 2009). Defendant had no questions during or after the field sobriety test. <u>Motion Hearing</u> at 10:46 a.m. (April 1, 2009). Defendant never indicated that he did not understand Officer Flickenger, and it was not apparent that Defendant did not speak English.[1] <u>Id</u>. at 10:47 a.m.; <u>Id</u>. at 10:56 a.m. Officer Flickenger concluded that Defendant did not need an interpreter. <u>Id</u>. At the end of the field sobriety test, Officer Flickenger determined that Defendant was under the influence of alcohol and he arrested Defendant. <u>Id</u>. at 10:44 a.m.

Looking at the totality of the circumstance, the Court finds that Officer Flickenger could reasonably believe that Defendant was able to understand English. <u>See</u> <u>Sangalang</u>, 2001 Guam at ¶ 13 Defendant was able to answer Officer Flickenger's questions – which were asked in English, Defendant was able to follow Officer Flickenger's direction – which were given in

---

[1] If a person indicates that he or she does not speak English, or if is apparent that he or she does not speak English the officer will makes efforts to procure an interpreter. <u>Motion Hearing</u> at 10:55 10:56 a.m. (April 1,2009).

The People of Guam vs. Kenser Rasauo, CM742-08
Decision and Order – Motion to Suppress

English and Defendant never informed Officer Flickenger that he did not speak or understand English. Therefore, the Court will deny Defendant's Motion to Suppress.

**b.    Miranda Waiver and Implied Consent Forms**

Defendant argued that he could not waive his Miranda rights because he could not read in English. Defendant's Motion to Suppress at 3 (February 19, 2009). Officer Laxamana asked Defendant to write his name on the Custodial Interrogation form ("Exhibit A"). Motion Hearing at 11:02 a.m. (April 1, 2009). Officer Laxamana first read the six statements concerning Miranda rights that are contained in Exhibit A[2] to Defendant. Id. at 11:01 a.m. Officer Laxamana then gave Defendant Exhibit A. Motion Hearing at 4:32 p.m. (March 30, 2009); Motion Hearing at 11:01 a.m. (April 1, 2009). Officer Laxarnana wanted Defendant to read Exhibit A and indicate that if he understood the six statements to indicate "yes". Motion Hearing at 4:32 p.m. (March 30, 2009); Motion Hearing at 11:02 a.m. (April 1, 2009). Officer Laxamana gave Defendant time to read and answer. Id. Defendant indicated to Officer Laxamana that he understood the instructions given. Id. Defendant looked Exhibit A over, and he filled out the form with "yes" to each of the six statements. Id. Defendant did ask a question about the third statement. Id. at 11:03 a.m. Officer Laxamana explained to Defendant that anything Defendant said could be used against him; Defendant then indicated that he understood the third statement. Id. Defendant was asked, how did he know to write yes or no on the form, he replied, "I guessed." Id. at 4:33 p.m. Defendant stated he answered "yes" to all the questions because he didn't understand Exhibit A. Id. at 4:35 p.m. Officer Laxamana then went over the "Waiver of Rights" contained in Exhibit A. Motion Hearing at 11:04 a.m. (April 1, 2009). Defendant read the "Waiver of Rights" section of Exhibit A and indicated to Officer Laxamana that he understood the "Waiver of Rights" section of Exhibit A. Id.

---

[2] Exhibit **A** contains Miranda rights. See Exhibit **A**

The People of Guam vs. Kenser Rasauo, CM742-08
Decision and Order – Motion to Suppress

Defendant was given the Implied Consent form for DUI[3] ("Exhibit B"). Motion Hearing at 4:35 p.m. (March 30, 2009). Officer Laxamana read the form to Defendant. Motion Hearing at 11:07 a.m. (April 1, 2009). Defendant was asked to then read it on his own, Id. Defendant was asked if he understood what he read and he indicated that he did understand. Id. Defendant placed his signature and initials that were on Exhibit B. Id. Defendant was given the option to take a blood test, urine test or breath test. Motion Hearing at 4:36 p.m. (March 30, 2009); Motion Hearing at 11:08 a.m. (April 1, 2009). Defendant when asked which test did he wanted to take. Motion Hearing at 4:36 p.m. (March 30, 2009). Defendant then signed Exhibit B – agreeing to take a breath test. Motion Hearing at 11:09 a.m. (April 1,2009). Defendant also told Officer Laxamana that he wanted to take a breath test. Id.

Laxamana asked Defendant if he spoke English and Defendant responded that he did. Id. at 11:11 a.m. Officer Laxamana asked Defendant the questions contained on the Report of Alcohol Influence ("Exhibit C"). Id. at 11:10 a.m.; Motion Hearing at 4:43 – 4:44 p.m. (March 30, 2009). Defendant responded to Officer Laxamana's questions. Motion Hearing at 11:13 a.m. (April 1, 2009). Officer Laxamana asked all these questions in English. Id. Officer Laxamana, when communicating with the Defendant, did not at any time believe that Defendant did not understand him. Id. at 11:14 a.m. Defendant did not tell Officer Laxamana that he did not understand English. Id. Defendant signed Exhibit C. Motion Hearing at 4:41 p.m. (March 30, 2009). Defendant admitted that he understood some of the questions that the first police officer asked him. Id. at 4:45 p.m. Defendant testified that he spoke a little English. Id. at 4:46 p.m.

Looking at the totality of the circumstances, (1) Officer Laxamana indicated there were no indications that Defendant did not understand English; (2) Officer Laxamana could reasonably believe that the Defendant was able to understand his Miranda rights because Officer

---

[3] **A form to submit or refuse a test to evaluate the amount of alcohol in a person's body.**

**The People of Guam vs. Kenser** Rasauo, CM742-08
**Decision and Order – Motion to Suppress**

**Page 8 of 9**

Laxamana read the Miranda rights to him and when asked he stated that he understood; (3) Defendant never informed Officer Laxamana that he did not speak or read in the English language; and (4) Defendant lived in the Territory of Guam for the last 13 years. For these reasons, the Court finds that the Defendant's waiver of Miranda rights, consent to the breath test and the answers to Officer Laxamana's questions were made "voluntarily, knowingly, and intelligently." Miranda, 384 U.S. at 444, 86 S.Ct 1602 (1966). The Court finds that Officers Laxamana had explained the rights and had asked the defendant if he understood them and that the Defendant had responded that he did and had never indicated that he did not understand his rights. See Bernard S., 795 F.2d at 752. Therefore, the Court will deny Defendant's Motion to Suppress.

**CONCLUSION**

By preponderance of the evidence and based on the foregoing reasons, the Court DENIES Defendant's Motion to Suppress.

**SO ORDERED** this  day of _____ 2009.

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam
Dated at Hagåtña, Guam

APR 0 3 2009

James R. Boria
Deputy Clerk, Superior Court of Guam